IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-00213-NYW

S.R.T.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This civil action arises under Titles II and XVI of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED**.

## BACKGROUND

In this case, Plaintiff S.R.T. challenges the Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). *See generally* [Doc. 11]. She filed her applications for DIB and SSI on July 30, 2021, alleging that she is disabled due to the following conditions: arthritis, depression, and chronic pain. [Doc. 10-3 at 88, 90].[2] S.R.T. listed her disability onset date as June 1, 2021. [*Id.* at 90].

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b).

[2] When citing to the Administrative Record, the Court cites to the docket number assigned by the CM/ECF system and the page number associated with the

The Social Security Administration ("SSA") initially denied Plaintiff's applications on July 25, 2022, [*id.* at 119–21; Doc. 10-4 at 145–50], and again upon reconsideration on December 28, 2022, [Doc. 10-3 at 123–30; Doc. 10-4 at 153–56].  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), [Doc. 10-4 at 161], and a hearing was convened before ALJ Lynn Ginsberg on August 4, 2024, [Doc. 10-2 at 40].

On September 29, 2023, the ALJ issued a decision denying Plaintiff's requests for benefits.  [*Id.* at 15–27].  In her decision, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2025 and that Plaintiff had not engaged in substantial gainful activity since June 1, 2021, the alleged onset date.  [*Id.* at 17].  The ALJ determined that Plaintiff has the following severe impairments:  obesity, degenerative and inflammatory (rheumatoid) arthritis in multiple joints, chronic pain, fibromyalgia, chronic kidney disease, status post knee replacement, depression, generalized anxiety disorder, and post-traumatic stress disorder.  [*Id.*].  The ALJ determined that these medically determinable impairments "significantly limit [Plaintiff's] ability to perform basic work activities," but also concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations.  [*Id.* at 19].

Relevant to S.R.T.'s appeal, the ALJ found that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace and a mild limitation in interacting with others.  [*Id.* at 19–20].[3]  The ALJ found that Plaintiff has the residual functional capacity

---

Administrative Record, which is found in the bottom right-hand corner of each page.  For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

[3] A "mild" limitation is present when the claimant's "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is slightly limited."  20

("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567,[4] but with the following restrictions:

> [Plaintiff] can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk for about 2 hours and sit for about 6 hours in an 8[-]hour workday with normal breaks; [can] never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl; can handle and finger bilaterally frequently; [can] tolerate occasional use of moving[] hazardous machinery; [can] have no exposure to unprotected heights; and can understand, remember and carry out detailed but not complex instructions.

[Doc. 10-2 at 20]. The ALJ concluded that S.R.T. is capable of performing her past relevant work as a telemarketer, "a semiskilled . . . sedentary occupation." [*Id.* at 26]. As a result, the ALJ concluded that Plaintiff is not disabled as defined in the Act. [*Id.*].

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 6, 2023, [*id.* at 1–3], which rendered the ALJ's decision the final decision of the Commissioner. On January 24, 2024, Plaintiff sought judicial review of the Commissioner's decision in the United States District Court for the District of Colorado. [Doc. 1]. This matter is now ripe for disposition.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if they are insured, have not reached retirement age, have filed an application for DIB, and are under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that they

---

C.F.R. § 404, Subpt. P, App. 1, § 12.00(F)(2)(b). A "moderate" limitation exists when the claimant's "functioning in [the relevant] area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

[4] "Sedentary work" is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

3

were disabled prior to their date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). In addition, SSI is available to an individual who is financially eligible,[5] files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382; 20 C.F.R. § 416.202.

An individual is disabled only if their "physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), *id.* § 1382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *id.* § 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the RFC to perform her past relevant work; and

---

[5] SSI is a needs-based program established for individuals with limited resources. *See* 20 C.F.R. § 416.110; *see also Ford v. Commissioner*, 816 F. App'x 276, 279 (10th Cir. 2020) (discussing the distinction between DIB and SSI).

4

> 5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See id.* §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's decision, the Court limits its inquiry to whether it is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Flaherty*, 515 F.3d at 1070 (quotation omitted), and evidence is not substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**ANALYSIS**

S.R.T. argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ "failed to properly account for Plaintiff's moderate limitations in concentration, persistence and pace and mild limitation in social interaction." [Doc. 11 at 6 (emphasis omitted)]. She contends that the ALJ "failed to incorporate any limitation in the RFC for Plaintiff's mild limitations in social interaction" at all, and also "failed to explain how Plaintiff's moderate limitations in concentration, persistence and pace are

5

accounted for with a limitation to detailed but not complex tasks." [*Id.* at 7]. She argues that these errors warrant remand. [*Id.* at 7, 13].

The Commissioner responds first that the ALJ reasonably accounted for Plaintiff's moderate limitation in concentration, persistence, or pace because the RFC limited Plaintiff to work involving detailed, but not complex, instructions. [Doc. 13 at 6, 10–12]. According to the Commissioner, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") rejected the argument Plaintiff makes here in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015). [Doc. 13 at 8–10]. The Commissioner also asserts that the ALJ was not required to account for Plaintiff's mild limitation in social interaction in the RFC determination, but in any event, the Commissioner "reasonably concluded that no social-interaction restriction was warranted." [*Id.* at 12–15].

I. **Plaintiff's Moderate Limitation in Concentration, Persistence, and Pace**

With respect to her moderate limitation in concentration, persistence, and pace, Plaintiff argues that the ALJ was required to include all of the limitations assessed in steps two and three into the RFC determination at step four. [Doc. 11 at 8, 10–12]. The Commissioner does not appear to disagree with this assertion, but contends that the ALJ adequately accounted for Plaintiff's moderate limitation in the RFC. [Doc. 13 at 6–12]; *compare* [*id.*], *with* [*id.* at 12 (the Commissioner arguing that the ALJ was not required to account for Plaintiff's *mild* limitation in the RFC). Based on the Parties' agreement, the Court assumes without deciding that the ALJ was required to account for Plaintiff's

6

moderate limitation in concentration, persistence, and pace in the RFC, and turns to whether the ALJ complied with that requirement.[6]

At step three, the ALJ found that Plaintiff is moderately limited in her ability to maintain concentration, pace, and persistence. [Doc. 10-2 at 19]. The ALJ appears to have based this finding on the fact that, in April 2023, Plaintiff "reported some deficits in attention and concentration associated with depression." [*Id.* at 20]. The ALJ also noted, however, that Plaintiff had normal mental status findings in two March 2023 exams, and that, in January 2022,[7] Plaintiff "stated that she could always follow spoken instructions and believed she could follow written instructions." [*Id.* at 19 (citing [Doc. 10-6 at 295; Doc. 10-9 at 1581, 1588–90, 1592, 1594–97])]. Later in her decision, when discussing the RFC, the ALJ observed that Plaintiff takes medication for her mental impairments, attends bimonthly therapy sessions, and sees a psychiatrist once monthly. [*Id.* at 21]. She noted Plaintiff's reports of daily episodes of crying, which affect her concentration,

---

[6] There is conflicting authority on this point. *Compare, e.g.*, *Willie v. Saul*, No. 19-cv-00329-SMV, 2020 WL 2065286, at *4 (D.N.M. Apr. 29, 2020) (stating that once an ALJ has assessed certain limitations at steps two and three, the ALJ is "required *either* to include corresponding limitations in the RFC assessment *or* to explain the omission" (quotation omitted)), *and Vigil*, 805 F.3d at 1203 (assessing whether the ALJ "accounted for [the plaintiff's] moderate concentration, persistence, and pace problems in his RFC assessment," after acknowledging that a limitation in concentration, persistence, and pace does "not necessarily translate to a work-related functional limitation"), *with E.R.D. v. O'Malley*, No. 23-cv-02155-LTB, 2024 WL 3276158, at *5 (D. Colo. July 2, 2024) ("To the extent that Plaintiff argues that the case law mandates that the ALJ either incorporate or specifically reject a claimant's limitations found during the [steps two or three] when assessing their RFC, I . . . disagree."), *and Asher M. v. Kijakazi*, No. 2:21-cv-00156-SCY, 2022 WL 2952884, at *3 (D.N.M. July 26, 2022) ("The Court rejects the argument that an ALJ must either mechanically mirror step-three findings in the RFC, or explain the omission.").

[7] The Court notes that S.R.T. dated this form using her birthdate, not the date she completed the form. *See* [Doc. 10-6 at 297]. The Administrative Record Appendix states that this form was completed on January 27, 2022. [Doc. 10-1 at 2].

but concluded, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent" with the evidence in the record.  [*Id.*].  The ALJ then noted a number of examinations in which Plaintiff's attention, concentration, and thought processes, among other things, were within normal limits.  [*Id.* at 23–24 (citing [Doc. 10-9 at 1592–96, 1608–12, 1618])].  The ALJ summarized the record as showing that "[t]he claimant's mental health treatment records show generally normal mental status findings." [*Id.* at 24].  And "[b]ased on [Plaintiff's] reported difficulties with attention and concentration during her April 2023 exam," the ALJ found that Plaintiff "can understand, remember and carry out detailed but not complex instructions." [*Id.*].  Finally, the ALJ later explained that Plaintiff's "mental impairments are well controlled with therapy and medication other than a moderate deficit in the ability to concentrate, persist and maintain pace," such that "[s]he is able to understand, remember and carry out detailed but not complex instructions." [*Id.* at 26].

The Court finds that the ALJ properly accounted for Plaintiff's moderate limitation in maintaining concentration, pace, and persistence in fashioning the RFC.  "[A]n administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). This is what the ALJ did here by framing Plaintiff's moderate limitation into a work-related functional limitation. *See Jaramillio v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (the ability to "understand, carry out, and remember simple instructions" is an "example[] of [a] work-related mental function[]" (quotation omitted)); SSR 96-8P, 1996 WL 374184, at *6 (S.S.A. July 2, 1996) ("[N]onexertional capacity must be expressed in terms of work-related functions. . . .  Work-related mental activities . . . include the abilities to:

8

understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

To the extent Plaintiff argues that the connection between her limitation in concentration, persistence, and pace and the work-related limitation to detailed but not complex instructions is not obvious and requires more explanation, *see* [Doc. 11 at 10–11], the Court respectfully disagrees.  Plaintiff contends that "[t]he ability to perform detailed instructions does not appear to indicate whether Plaintiff can sustain the performance of such work on a regular and consistent basis[.]"  [*Id.* at 11].  However, Plaintiff does not direct the Court to any specific evidence showing that Plaintiff does not have the ability to "sustain the performance of [work involving detailed instructions] on a regular and consistent basis" that she believes the ALJ failed to consider.  *See generally* [*id.*]; *cf. Lager v. Commissioner*, No. 22-4116, 2023 WL 6307490, at *2 (10th Cir. Sept. 28, 2023) (finding that the plaintiff's "speculation that her moderate limitations *may* have involved off-task behavior and unscheduled breaks does not reflect the ALJ's findings").

Moreover, the SSA's Program Operations Manual System ("POMS")[8] instructs that, for semi-skilled and skilled work, "there is an increasing requirement for understanding and memory *and for concentration and persistence*, e.g.: the ability to . . . *understand and remember detailed instructions*, [and] *carry out detailed instructions*."  *See* POMS § DI 25020.010(B)(2)(4) (emphasis added).   The POMS therefore demonstrate that there *is* a connection between concentration and persistence and the

---

[8] "The POMS is 'a set of policies issued by the [Social Security] Administration to be used in processing claims.'"  *Jaramillo*, 576 F. App'x at 875 n.3 (quoting *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999)).

ability to understand, remember, and carry out detailed instructions.  Although an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment," *Vigil*, 805 F.3d at 1203, the Court finds here that, by limiting the complexity of instructions that Plaintiff is required to understand, remember, and carry out—thereby limiting the difficulty of the instructions Plaintiff must concentrate on, persist through, and maintain pace with—the Court finds that the ALJ adequately accounted for Plaintiff's limitation in concentration, persistence, and pace.  *See Lager*, 2023 WL 6307490, at *2 (RFC limiting the plaintiff to simple work-related decisions and "short and simple instructions" adequately accounted for medical source's finding that the plaintiff was moderately limited in concentration, persistence, and pace); *Bell v. Berryhill*, No. 6:16-cv-00096-SPS, 2017 WL 4232958, at *4–5 (E.D. Okla. Sept. 25, 2017) (limitation to simple tasks and simple work-related decisions accounted for moderate limitation in concentration, persistence, and pace); *Martinez v. Colvin*, No. 15-cv-00050-REB, 2016 WL 1247765, at *6 n.6 (D. Colo. Mar. 30, 2016) ("The ALJ accounted for plaintiff's moderate difficulties in concentration, persistence, and pace by limiting plaintiff to work requiring no more than detailed but non-complex instructions[.]").

      The ALJ provided a thorough discussion of the record, explained why she found Plaintiff was moderately limited in concentration, persistence, and pace, and tied that limitation to the RFC limiting to Plaintiff to work requiring detailed, but not complex, instructions.  The Court finds no error here.

## II. Plaintiff's Mild Limitation in Social Interaction

Next, S.R.T. argues that the ALJ committed reversible error by "fail[ing] to provide any limitation in the RFC that would account for Plaintiff's mild limitations in social interactions found by the ALJ in the PRT." [Doc. 11 at 12]. She argues that her former telemarketing job—the only job the ALJ identified that Plaintiff could perform, *see* [Doc. 10-2 at 26]—"requires at least frequent interaction with the public," [Doc. 11 at 13]. Plaintiff further argues that the ALJ did not inquire from the vocational expert ("VE") what effect Plaintiff's social limitations may have on her ability to perform her past work. [*Id.*]. In Plaintiff's view, this is significant, because if her mild limitation in social interaction "eliminate[s] her ability to perform work as a telemarketer, [then] she would be found disabled . . . because the VE testified that [Plaintiff] would have no transferrable skills to any other work." [*Id.*].

The Commissioner responds that a mild limitation in social interaction "does not suggest, much less require, that a social-interaction workplace restriction is warranted," [Doc. 13 at 12 (emphasis omitted)], as "[m]ild limitations . . . do not suggest any significant reduction of an individual's capacity to perform activities in a work setting," [*id.*]. The Commissioner argues that the ALJ "appropriately considered the evidence related to Plaintiff's mental functioning and reasonably concluded that no social-interaction restriction was warranted." [*Id.*]. But notably, the Commissioner does not cite to any portion of the ALJ's decision in which she concluded that no work-related functional restriction was required. *See* [*id.* at 12–15]. Indeed, there is no such discussion in the ALJ's decision.

The ALJ found that Plaintiff has a mild limitation in interacting with others. [Doc. 10-2 at 19]. She explained:

> [Plaintiff] reported that she lives with her daughter. The claimant stated in her Function Report that she got along well with authority figures and had never been fired or laid off from a job because of difficulty getting along with others. She also reported that she spent time with others in person and on the phone, talked to someone every day and went to church twice a week. She has been consistently polite and cooperative with treating providers. Therefore, the undersigned finds a mild limitation in this domain.

[*Id.* (citations omitted)]. However, the ALJ did not address this limitation anywhere else in her opinion, *see* [*id.* at 15–27], including in the RFC determination, [*id.* at 20–26].

To the extent the Commissioner argues that a mild limitation "does not suggest any need for workplace restrictions" because a "mild" restriction is defined in the Regulations as "merely 'slight' and retaining the ability to effectively function on a sustained basis," *see* [Doc. 13 at 12–13], the Court is respectfully unpersuaded that any such blanket rule exists. "A mild limitation is not the same as no limitation," *Hurt v. O'Malley*, No. 23-cv-00518-AMG, 2024 WL 1863122, at *5 (W.D. Okla. Apr. 29, 2024), and courts have found error where an ALJ failed to address even mild limitations in the RFC analysis, *see, e.g.*, *Lydon v. Commissioner*, No. 18-cv-01526-MSK, 2019 WL 3812379, at *4 (D. Colo. Aug. 14, 2019). Even if an ALJ need not include verbatim the mild limitations in the RFC assessment, "the ALJ still need[s] to address the underlying non-severe medically determinable mental impairments in the RFC assessment." *T.T. v. Kijakazi*, 707 F. Supp. 3d 1068, 1075 (D. Colo. 2023) (quoting *Mary E. K. v. Kijakazi*, No. 21-cv-02373-TC, 2023 WL 4105155, at *4 (D. Kan. June 21, 2023)). Indeed, the Social Security Regulations require that all medically determinable impairments, severe

and non-severe, must be considered in the RFC assessment. *See McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) (citing 20 C.F.R. § 404.1545(e)).

Unlike Plaintiff's moderate limitation in concentration, persistence, and pace, the RFC and its accompanying discussion do not mention, discuss, or account for Plaintiff's mild limitation in interacting with others. [Doc. 10-2 at 20–26]. This was error. *See Lydon*, 2019 WL 3812379, at *4 (concluding that "the ALJ's RFC was insufficient to account for" the plaintiff's mild limitation in interacting with others when it was "silent as to any mental impairments whatsoever" and no accommodation within the RFC related to the limitation in interacting with others). If the ALJ concluded that Plaintiff's mild limitation did not require a work-related functional limitation, as the Commissioner suggests, the ALJ was nevertheless obligated to consider it in the RFC assessment, and it is not clear that she did. *See generally* [Doc. 10-2 at 20–26]. By completely omitting any discussion of this mild limitation from the RFC assessment, the Court is unable to determine whether the ALJ considered this limitation in fashioning the RFC. *T.T.*, 707 F. Supp. 3d at 1075.

Like the RFC, it does not appear that the ALJ incorporated Plaintiff's mild limitation in interacting with others in the hypothetical questions posed to the VE. "Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the [Commissioner] must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). Oftentimes, an ALJ will "pose[] one or more questions, asking the VE to assume a hypothetical individual with specified limitations that the ALJ may or may not ultimately determine to be applicable to the

claimant." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010). "By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the hypothetical limitations." *Id.* However, "[i]t is well-established that the ALJ's hypothetical questions must include all, but only, those limitations borne out by the evidentiary record." *Terwilliger v. Commissioner*, 801 F. App'x 614, 628 (10th Cir. 2020) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013)). If a hypothetical question fails to include every limitation borne out by the record, then the "VE's testimony in response to it cannot provide substantial evidence to support an ALJ's findings regarding the work a claimant is able to perform." *Ruth*, 369 F. App'x at 931.

At the hearing, the ALJ presented four hypothetical questions to the VE. First, she presented two hypothetical questions contemplating an individual with certain physical limitations, but with no expressly stated mental limitations. [Doc. 10-2 at 59, 62]. The ALJ asked whether these hypothetical individuals could perform Plaintiff's past work, and the VE confirmed that they could perform Plaintiff's past work as a collection clerk or telemarketer. [*Id.* at 59–60, 62]. The ALJ then asked the VE to consider a person with the physical limitations contemplated by a prior hypothetical but who is also limited, "due to concentration issues," to understanding, remembering, and carrying out detailed but not complex instructions. [*Id.* at 63]. The VE answered that this additional mental limitation would eliminate the collection clerk position and leave only the telemarketer position. [*Id.*]. And finally, the ALJ limited the hypothetical worker once more and asked the VE whether a person with the previously stated physical and concentration-based limitations, but who also could only occasionally interact with the public and adapt to changes in the workplace, could still work as a telemarketer. [*Id.* at

14

63–64]. The VE said that they could not, because the limitation to only occasional interaction with the public "by itself would eliminate all of [Plaintiff's] past work." [*Id.* at 64]. Ultimately, the limitations contained in the third hypothetical match the RFC fashioned by the ALJ. *See* [*id.* at 26].

It is not clear to the Court, however, whether the ALJ actually presented a hypothetical question that reflected "all . . . those limitations borne out by the evidentiary record." *Terwilliger*, 801 F. App'x at 628. Plaintiff's mild limitation in interacting with others means that her ability to perform this activity on a sustained basis is "slightly limited." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(F)(2)(b). But the only hypothetical question containing a social interaction limitation contemplated a person who could only *occasionally* interact with the public—i.e., a person with a *greater-than-mild* limitation in social interaction. *See Irving v. Astrue*, No. 10-cv-01657-CMA, 2011 WL 2173780, at *7 (D. Colo. June 1, 2011) (explaining that "occasionally" is a term of art that "means 'occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday'" (citing SSR 96-9p, 1996 WL 374185, at *3 (S.S.A. July 2, 1996))). Stated differently, not only is it unclear whether the ALJ considered Plaintiff's mild social interaction limitation in the RFC assessment, it does not appear to the Court that the ALJ questioned the VE about whether someone with Plaintiff's specific limitations could perform the work of a telemarketer.

To explain why this error was not harmless, some additional context is required. At step five, an ALJ may "take administrative notice of reliable job information available from various governmental and other publications," including the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 404.1566(d)(1). "Each job listed in the DOT is

15

described by reference to various components," including a "Worker Function" component labeled "People," which "expresses the degree of interaction with other people that the job requires." *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005). This component "rates the amount of interaction with people [required for the job] on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016).

Here, the only job identified in the ALJ's decision that Plaintiff could perform was a telephone solicitor (or telemarketer) position. [Doc. 10-2 at 26]. A telephone solicitor has a "people" rating of 5, *see* DOT 299.357-014, 1991 WL 672624 (Jan. 1, 2016), which means that the job requires "Persuading: Influencing others in favor of a product, service or point of view," *Sigala v. Berryhill*, No. 17-cv-01126-JHR, 2019 WL 719512, at *4 (D.N.M. Feb. 20, 2019) (citing DOT, App. B, 1991 WL 688701 (Jan. 1, 2016)). The DOT also states that, for the telemarketing position, interaction with people is "significant." *See id.*; *see also* DOT 299.357-014, 1991 WL 672624. And the DOT description for a telephone solicitor describes the following job responsibilities:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contract DRIVER, SALES ROUTE . . . to arrange delivery of merchandise.

DOT 299.357-014, 1991 WL 672624. "[A]ll of a telemarketer's eight duties are directed at an ultimate goal: the solicitation of orders over the telephone." *Sigala*, 2019 WL 719512, at *5.

In other words, based on the DOT, the telephone solicitor job requires at least *some*—and a potentially significant—level of social interaction with others. But the ALJ did not ask, and the VE did not answer, a hypothetical question that accounted for Plaintiff's mild limitation in interacting with others. It could be that Plaintiff's limitation has no preclusive effect on her ability to perform the job, but this is not a determination that the ALJ made, or one that the Court can make in the first instance.[9]

"Because the ALJ omitted, without explanation, impairments that [s]he found to exist, . . . the resulting hypothetical question[ing] was flawed." *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005); *see also Lydon*, 2019 WL 3812379, at *5; *Brown v. Colvin*, No. 14-cv-04064-DDC, 2015 WL 4390252, at *18 (D. Kan. July 15, 2015) (remanding the case where the ALJ's hypothetical "did not adequately incorporate the ALJ's more specific findings about plaintiff's mental impairments"). And because the ALJ only identified one job that Plaintiff could perform, but the VE was not questioned whether someone with Plaintiff's social interaction limitation could perform this work, this error was not harmless. *Compare* [Doc. 10-2 at 26], *with Duncan v. Colvin*, 608 F. App'x 566, 577 (10th Cir. 2015) (ALJ's failure to include claimant's social interaction limitation in hypothetical questions was harmless because "the full DOT job descriptions for the jobs

---

[9] The Court acknowledges that neither Party cites to the DOT nor relies on this particular line of reasoning. However, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). "The party-presentation principle . . . restricts courts from raising new issues," but does not require a court to "render its decision in accordance with the position of one of the parties." *United States v. Cortez-Nieto*, 43 F.4th 1034, 1052 (10th Cir. 2022). Because the DOT provides important context to the Court's decision that the error was not harmless, the Court finds it appropriate to rely on this authority.

17

[the claimant could perform] indicate[d] that contact with people [was] rather limited" (quotation omitted)).

Accordingly, the Court respectfully reverses and remands the Commissioner's decision for further proceedings, including but not limited to determining whether Plaintiff's mild limitation in interacting with others equates to a work-related functional limitation and presenting the VE with a complete description of Plaintiff's physical and mental limitations, because "[w]hile a 'not severe' impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *McFerran*, 437 F. App'x at 638 (quotation omitted).

## CONCLUSION

For the reasons set forth in this order, the Commissioner's decision is respectfully **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

DATED:  February 14, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge